THE PEOPLE *ex rel.* Thomas L. Aldridge *et al.* Plaintiffs in Error, *vs.* ROBERT M. RENDLEMAN *et al.* Defendants in Error.

*Opinion filed April 19, 1911—Rehearing denied June 7, 1911.*

1. QUO WARRANTO—*the court is vested with wide discretion in matter of granting or denying leave to file an information.* Upon application for leave to file an information in the nature of *quo warranto* for the redress of the private wrongs of the relators the court is vested with a wide discretion, and may consider the necessity for filing the information and circumstances or facts showing to the court that the relators have been guilty of *laches* in applying for relief.

2. SAME—*court may deny leave to file information if there has been prejudicial delay by relators.* Upon application for leave to file an information in the nature of *quo warranto* to redress private wrongs, if the relators have not acted in apt time and the respondents have expended money or incurred liabilities which might have been saved by prompt action, the court may, in its dis-

cretion, deny leave to file the information without considering the matters set up in the information.

3. DRAINAGE—*when judgment denying leave to file information in quo warranto will be sustained.*  A judgment denying leave to file an information in the nature of *quo warranto* against the commissioners of a drainage district will be sustained on appeal where the relators have allowed nearly four years to elapse since the district was organized, during which time much work was done and money expended, before attacking the organization of the district upon grounds they might have availed themselves of by proper objection at the time the district was organized.

WRIT OF ERROR to the Circuit Court of Union county; the Hon. A. W. LEWIS, Judge, presiding.

WILLIAM D. LYERLE, State's Attorney, (R. J. STEPHENS, of counsel,) for plaintiffs in error.

A. NEY SESSIONS, and JAMES LINGLE, for defendants in error.

Mr. CHIEF JUSTICE VICKERS delivered the opinion of the court:

William D. Lyerle, State's attorney of Union county, presented to the circuit court a petition for leave to file an information in the nature of a *quo warranto* against Robert M. Rendleman and Samuel F. Davie, of Union county, and Thomas J. McClure, of Alexander county, to require them to show by what authority or right they claimed to hold and execute the office of commissioners of Clear Creek Drainage and Levee District of the counties mentioned, and by what right they claimed that said district had a legal existence and a right to hold and execute the franchise of a corporation and to exercise the rights and privileges of a drainage district. The petition was presented on the information and relation of a number of citizens and land owners in said district and was verified by the oath of a number of the relators. The petition was accompanied by

a copy of the proposed information, which is in three counts. Upon the presentation of the petition, on June 21, 1910, a rule to show cause by the following Monday was entered against the defendants. In response to the said rule the defendants entered their appearance, and on a hearing before the court on June 28 three affidavits, together with oral and documentary evidence, were submitted by the respective parties to the court. On July 1 the court entered an order refusing leave to file the information and dismissed the petition and adjudged the costs against the relators. The relators excepted to the order and judgment of the court and preserved by the bill of exceptions all matters connected with the hearing of the petition, and have sued out this writ of error for the purpose of obtaining a review of the order refusing leave to file the information.

The petition recites that said pretended drainage district was organized upon a petition presented by C. E. Anderson and 89 other persons to the March term, 1907, of the county court of Union county, alleging that the petitioners constituted a majority of the land owners of the proposed district and represented one-third or more of all the lands embraced therein, and praying for the organization of the territory described in the petition into a drainage and levee district. The petitioners in the proceeding at bar charged that the petition to organize the drainage and levee district did not contain a description of the proposed starting points, route and terminus of the work thereby proposed, and that said petition did not contain a sufficient description of the lands affected by the proposed district and did not give the names of the owners thereof, and it is further alleged that a majority, in numbers, of the land owners of the district did not sign the petition to organize. It is also alleged that the county court acted, in the organization of the said district, without sufficient and proper notice being published or given, as required by the statute. It is charged in the petition that at the date of filing the petition for the organi-

zation of the drainage district Ezekiel Moore was an owner of land located within the boundaries of the proposed district; that said Moore then resided in Jackson county; that no notice of any kind was sent to him within three days after the first publication or at any other time, and that said Moore had not entered his appearance to said petition or proceedings thereon. The petition alleges that at the May term, 1907, a hearing was had in the county court and an order entered granting the prayer of the petition and appointing respondents herein commissioners of Clear Creek Drainage and Levee District. It is alleged further that the said commissioners assumed the powers, privileges and prerogatives of drainage commissioners, and that in January, 1908, the said commissioners submitted to the county court a report, accompanied by maps, profiles, etc., making estimates and giving descriptions of certain work by said commissioners laid off and proposed, the cost of which, including incidental expenses, they estimated at $225,512.81; that afterwards, in May, 1908, an amended report was filed by the commissioners in which the estimated cost of the proposed work was reduced to $225,000, which said amended report was then approved and confirmed by the court and an order of court entered declaring the district, with certain boundaries in said order set forth, duly established as provided by law; that on December 27, 1909, the commissioners filed their roll of assessments of benefits and damages, by which they distributed and apportioned to the various tracts and parcels of land, including railroads and plankroads, the aggregate sum of $285,000, which exceeded the estimated cost of the proposed work $60,000; that thereupon said commissioners caused notice to be published of their intention to apply to the court on January 17, 1910, for the purpose of having a jury empaneled to consider the assessment roll aforesaid; that on February 23, 1910, the commissioners also filed their petition to condemn land for a right of way for levees and ditches. The petition avers

that after the empaneling of a jury to consider the assessment roll in January, 1910, the commissioners withdrew the assessment roll and procured a discharge of the jury, and thereupon made material alterations in the plans, specifications and estimates for the proposed work without having another petition signed by the land owners or a majority of them, and it is alleged that the aggregate estimated cost of the work as shown by the last report was $330,000; that said commissioners afterwards filed another roll of assessments of benefits and damages and distributed and apportioned to the several tracts of land in said district said sum of $330,000 and annual benefits of $3300, and caused notice to be again published of their intention to have a jury empaneled for the purpose of considering the assessment roll as finally corrected. It is also alleged that an amended petition for condemnation of right of way was filed on November 1, 1909, and that respondents are insisting upon their right to proceed to have said assessment roll confirmed and to condemn a right of way for ditches and levees.

The foregoing statement contains the substance of the averments of the petition, upon which the court entered a rule on the respondents to show cause against petitioners for leave to file an information. Upon a hearing of the petition the court considered, among other things, the affidavit filed by Mr. Sessions, who testified that he is the owner in fee simple of more than 450 acres of land within the boundaries of the proposed drainage district; that he is an attorney for the commissioners of said drainage district, and that he is familiar with the physical situation of the district as well as the various proceedings that have occurred in connection with the organization of the same. The affidavit of Mr. Sessions gives a detailed history of the proceeding from the time the original petition for the organization of the district was filed down to the present, and sets out at large copies of the petition, notice and vari-

ous orders of the court made in connection with the organization of this drainage district. The affidavit shows that there is a total of 39,816.59 acres of land within the boundaries of the proposed district; that a petition was duly presented to the county court praying for the organization of a drainage and levee district, to be known as Clear Creek Drainage and Levee District, on March 16, 1907; that said petition contained a description of the boundaries of said district, and set up facts from which it appears that all of the lands within said district require embankments and grades to protect them from overflows from the Mississippi river and tributary streams, and require ditches to carry off the water, and pumps and machinery and other apparatus for the purpose of relieving said lands from overflow; that with the said petition was filed a paper entitled "Clear Creek Drainage and Levee District.—Names of land owners and acreage," which said paper is known in the record as "Paper A" and contains the names of 196 persons as owners of land within said district, together with the acreage of each set opposite the respective names of such owners. It also appears that a notice was published in *The Talk,* a newspaper published at Anna, in Union county, and that said notice was published for three successive weeks, the last insertion thereof being on the 5th day of April, 1907. A copy of said notice is recited in Mr. Sessions' affidavit, from which it appears that all persons were duly notified that the petitioners were asking for a hearing on said petition at the May law term of the county court of said Union county, on the second Monday in May, 1907. Said notice contains a copy of the original petition and is signed by a number of petitioners as a committee. It also appears that a number of the relators in this proceeding appeared and participated in various proceedings had in court in connection with the organization of this district. The petition for the organization of this district was filed March 16, 1907. Notice of a hearing was

published in April and the hearing was had in May of said year, when the court appointed the commissioners and entered an order declaring the district duly organized. At the time this order was entered in 1907 it is stated in the affidavit of Mr. Sessions that the total costs that had been incurred at that time did not exceed $25 or $30. At the time the application for leave to file the information was made, in June, 1910, the costs and expenses incurred for which the district was indebted were between $7000 and $8000.

In the view that we have of this case it will only be necessary to consider one question. Upon an application for leave to file an information in the nature of *quo warranto* the court is vested with a wide discretion, and may consider the necessity of filing the information and any circumstances or facts which are brought to the court's attention which show that the relators have been guilty of *laches* in applying for relief. (*People* v. *Schnepp,* 179 Ill. 305.) In a case where the relators have not applied in apt time, and during the delay the respondents have expended money or incurred liabilities which might have been saved by a prompt action, the court may properly, in the exercise of its discretion, refuse to enter into a consideration of the informalities set up in the information and deny the leave to file such information solely because of the prejudicial delay in applying for relief. (*People* v. *Hanker,* 197 Ill. 409; *People* v. *Hepler,* 240 id. 196; High on Ex. Legal Rem.—2d ed.—sec. 659.) The rules announced in the foregoing authorities apply to all cases where the information is presented by relators who are seeking to redress a private wrong. There is a distinction in this respect between cases that are presented on the information of the Attorney General or State's attorney for the redress of a public wrong, and those that are prosecuted on the relation of private persons, and where the people are merely the nominal prosecutors. (High on Ex. Legal Rem. sec. 652.)

The irregularities in the organization of this drainage district that are set up in the petition relate to matters that existed at the time the court entered an order confirming the organization of the district. Knowledge of these supposed defects must have been acquired by the relators in the early stages of the organization of the district. At all events, they were notified in the manner required by the statute, and they must be presumed to have had knowledge of the irregularities upon which they relied. Nearly four years elapsed after this district was organized before the relators applied for leave to file this information. During that time the affidavits filed in opposition to the motion show that an expense of about $8000 has been incurred in connection with the organization of this district. There has been much labor expended, and in addition to the money there has been a vast amount of work done which is not represented by the money expended. This circumstance was entitled to great weight in determining whether the court, in the exercise of its discretion, would allow the information to be filed. Without reference to the other questions, we are of the opinion that the decision of the court below may be sustained entirely on the ground that the application to file this information was not made in apt time. Relators having been notified, in the manner required by the statute, of the time and place when the petition to form this district would be considered, might have appeared at that time and urged the matters now complained of as objections to the organization of the district. Not having availed themselves of such remedy and having waited until the district has been organized and expended a large amount of money, the court did not abuse its discretion in refusing leave to file this information, and its judgment will accordingly be affirmed.    *Judgment affirmed.*